## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIE JONES,

     Petitioner,                      Case No. 4:17-10840
                                            HONORABLE TERRENCE G. BERG
v.                               UNITED STATES DISTRICT JUDGE

MARK MCCULLICK,

     Respondent.

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) THE MOTION FOR AN EVIDENTIARY HEARING; (3) A CERTIFICATE OF APPEALABILITY; AND (4) LEAVE TO APPEAL *IN FORMA PAUPERIS*

Willie Jones ("petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for two counts of armed robbery, Mich. Comp. Laws § 750.529; one count of carjacking, Mich. Comp. Laws § 750.529a; four counts of felony-firearm, second offense, Mich. Comp. Laws § 750.227b; one count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and being a fourth felony habitual offender, Mich.

Comp. Laws § 769.12.  For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I.  FACTUAL BACKGROUND

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On April 23, 2012, at about 11:00 p.m., three women were the victims of a carjacking, and two of them were robbed of their purses at gunpoint, while their vehicle was parked in front of a senior citizen apartment complex.  Shortly thereafter the vehicle was located by police and a chase ensued. Eventually defendant jumped from the moving vehicle and ran. After a foot chase by police, defendant was apprehended and the purses were recovered from the vehicle. The next day defendant was identified in a lineup as the perpetrator.

*People v. Jones*, No. 314171, 2014 WL 3047444, at *1 (Mich. Ct. App. July 3, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 948, 856 N.W. 2d 923 (2014).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Jones,* No. 241361-FC (Oakland Cty. Cir. Ct., July 17, 2015). The Michigan appellate courts denied petitioner's leave to appeal. *People v. Jones,* No. 330475 (Mich. Ct. App., Feb. 26, 2016); *lv. den.* 500 Mich. 896, 887 N.W. 2d 192 (2016).

Petitioner seeks habeas relief on the following fourteen claims: (1) trial counsel was ineffective for failing to locate or call an expert on eyewitness identification, (2) petitioner was denied his right to a fair trial when the judge failed to instruct the jury on the factors to assess eyewitness identification; counsel was ineffective for failing to request the instruction, (3) prosecutorial misconduct, (4) trial counsel was ineffective for failing to object to the prosecutorial misconduct, (5) petitioner was denied a fair trial and his right to confrontation because the prosecutor failed to produce an endorsed *res gestae* witness for trial, (6) trial counsel was ineffective for failing to interview or call *res gestae* witness Louise White for trial, (7) petitioner's Fourth Amendment rights were violated, (8) the prosecutor improperly introduced petitioner's post-*Miranda* silence at trial and violated petitioner's attorney-client privilege, (9) petitioner's right to confrontation was violated when he was

impeached with out-of-court statements, (10) petitioner's right to a fair trial was violated by the admission of prior bad acts evidence; counsel was ineffective for failing to request a limiting instruction, (11) the in-court identification of petitioner was tainted by an improper suggestive pre-trial identification, (12) trial counsel was ineffective for failing to appear at a polygraph examination of petitioner, (13) ineffective assistance of appellate counsel, and (14) ineffective assistance of trial counsel for failing to object to the references to his post-*Miranda* silence, for failing to object to the Confrontation Clause violation, and for failing to call a *res gestae* witness.

## II.  LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997) and *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Petitioner filed a petition with this Court raising fourteen claims, many of which contain several subclaims. The Sixth Circuit observed: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage v. Chicago Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012).[1]

---

[1] Respondent argues that several of petitioner's claims are procedurally defaulted either because he failed to preserve the issue by objecting at trial or raised the claim only for the first time in his post-conviction motion for relief from judgment, as opposed to his appeal of right. Petitioner alleges the ineffective assistance of trial

# III. DISCUSSION

### A. Claims # 1, 2, 3, 4, 6, 8, 9, 10, 12, and 14.

Petitioner's first, second, fourth, sixth, tenth, twelfth, and fourteenth claims allege that he was deprived of the effective assistance of trial counsel. Because petitioner alleges that trial counsel was ineffective concerning several related claims, the Court will discuss these underlying claims as part of petitioner's related ineffective assistance of counsel claims.

### i.  Standard of Review Governing Ineffective Assistance of Counsel Claims

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so

---

and appellate counsel regarding these issues.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, the defendant is required to overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's*

high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011). Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. at 107.

### ii.  Petitioner's Ineffective Assistance of Counsel Claims and Related Underlying Claims

#### 1. Petitioner's First Claim

In his first claim, petitioner argues that trial counsel was ineffective for failing to obtain an expert witness on eyewitness identification prior to moving for the appointment of an expert on eyewitness identification on the first day of trial, which was denied. As an initial matter, petitioner presented no evidence either to the state courts or to this Court that he has an expert witness who would be willing to testify with respect to this issue.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006).

In any event, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x. 822, 833 (6th Cir. 2011); s*ee also Dorch v. Smith*, 105 F. App'x. 650, 653 (6th Cir. 2004) (upholding as reasonable the Michigan Court of Appeals' conclusion that defense counsel's failure to call an expert witness on eyewitness

identification counsel did not satisfy *Strickland* because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner). Although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined Ms. Angela Williams, the sole witness who positively identified petitioner as the perpetrator, with the problems with her identification. (Tr. 11/6/12, pp. 6-22, 32-33). Counsel also cross-examined the detective who conducted the lineup. (*Id.*, pp. 118-22). Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel elicited testimony to discredit Ms. Williams' identification testimony. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006).

2. Petitioner's Second Claim

Petitioner in his second claim alleges that trial counsel was ineffective for failing to request that the judge give the jury CJI2d 7.8, Michigan's standard jury instruction which advises the jury about the different factors that it should consider in determining the reliability of

a witness' identification testimony. The Michigan Court of Appeals

rejected this claim:

> Second, defendant argues that he was denied the effective
> assistance of counsel because his trial counsel failed to
> request that the jury be instructed on the proper assessment
> of eyewitness identification testimony. In particular,
> defendant argues that his counsel should have requested that
> CJI2d 7.8, the "identification" standard jury instruction, be
> read to the jury, which advises the jury that it should consider
> different variables that may have affected a witness' ability to
> offer identification testimony. However, in this case, the trial
> court instructed the jury consistent with CJI2d 3.6, which also
> deals with the credibility of witness testimony and sets forth
> different variables that the jury might consider with regard to
> the credibility of witness testimony. Jury instructions are
> read as a whole to determine if they fairly presented the
> issues to be tried and sufficiently protected the defendant's
> rights. Thus, defense counsel's failure to request that CJI2d
> 7.8 be read to the jury did not prejudice defendant's case and
> his ineffective assistance of counsel claim premised on this
> ground is without merit. Further, and for the same reasons,
> defendant's claim that he was denied his right to have a
> properly instructed jury is without merit.

*People v. Jones*, 2014 WL 3047444, at * 2 (internal citations).

In the present case, although the judge did not read CJI 2d 7.8 to

the jurors, he did read CJI 2d 3.6, the general instruction on witness

credibility:

> As I have said before, it is your job to decide what the facts
> of the case are. You must decide which witnesses you believe
> and how important you think their testimony is. You do not
> have to accept or reject anything or what-everything a

witness said, you're free to believe all, none, or part of any person's testimony.

In deciding which testimony you believe you should rely on your own commonsense and everyday experience. However, deciding whether you believe a witness's testimony you must set aside any bias or prejudice you may have based on the race, gender or national origin of the witness.

There's no fixed set of rules for judging whether you believe a witness but it may help you to think about these questions. Was the witness able to see or hear clearly? How long was the witness watching or listening? Was anything else going on that might have distracted the witness? Did the witness seem to have a good memory? How did the witness look and act while testifying? Did the witness seem to be making an honest effort to tell the truth, or did the witness seem to evade the questions or argue with the lawyers? Does the witness's age and maturity affect how you judge his or her testimony? Does the witness have any bias, prejudice or personal interest in how this case is decided? Have there been any promises, threats, suggestions, or other influences that affected how the witness testified? In general, does the witness have any special reason to tell the truth or any special reason to lie? All in all, how reasonable does the witness's testimony seem when you think about all the other evidence in the case.

Sometimes the testimony of different witnesses will not agree and you must decide which testimony you accept. You should think about whether the disagreement involves something important or not and whether you think someone is lying or is simply mistaken. People see and hear things differently and witnesses may testify honestly but simply be wrong about what they thought they saw or heard. It's also a good idea to think about which testimony agrees best with the other evidence in the case. However, you may conclude that a witness deliberately lied about something that's important

to how you decide the case. If so, you may choose not to accept anything that witness said. On the other hand, if you think the witness lied about some things but told the truth about others you may simply accept the part you think is true and ignore the rest.

(Tr. 11/6/12, pp. 215-17).

The instruction as given by the judge adequately put the issues involving witness identification before the jury, thus, trial counsel's failure to request the special jury instruction on identification did not prejudice petitioner, so as to entitle him to habeas relief.[2]

### 3. Petitioner's Third Claim

In his third claim, petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d at 528 (internal citations omitted). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477

---

[2] *See Millender v. Adams*, 376 F.3d 520, 526 (6th Cir. 2004) (finding a habeas petitioner was not prejudiced by trial counsel's failure to instruct the jury on CJI 2d 7.8, when the trial judge in that case gave the jurors CJI 2d 3.6, the general instruction on identification) (internal citations omitted).

U.S. 168, 181 (1986) (internal citations omitted). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first alleges that the prosecutor improperly vouched for the credibility of his witness, Officer David McCormick, by asking the officer if anyone had located "more stolen cars than you," and then by stating, after defense counsel's objection, "Honestly, I don't know anybody who has had his kind of success and I want to mention why he's having the success." (Tr. 11/6/12, pp. 37-38).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such

personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his or her personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comment was brief and isolated. An isolated instance of

vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See, e.g., Joseph v. Coyle,* 469 F.3d 441, 474 (6th Cir. 2006). Secondly, even if this statement amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F.3d 388, 398 (6th Cir. 2001). Thirdly, the trial judge quickly sustained defense counsel's objections to these comments, thus, petitioner was not deprived of a fair trial because of prosecutorial misconduct. *U.S. v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003). Finally, the jury was instructed that the lawyers' statements and arguments were not evidence. (Tr. 11/6/12, p. 214). This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F.3d at 537.

Petitioner next claims that the prosecutor improperly attempted to invoke sympathy for the victims. Petitioner points to the prosecutor's opening statement, in which the prosecutor mentioned that the three female victims were sitting in their car, on a dark night at about 11:30 p.m., after picking up Ms. Louise White, the 73–year–old victim from the

hospital earlier in the day, when they "encountered someone [they] didn't plan on encountering ever in [their] life." Petitioner also points to several questions by the prosecutor that referenced to the fact that Ms. White was an elderly woman.

Petitioner is not entitled to habeas relief on his claim. First, the prosecutor's comments, even if it was an attempt to invoke sympathy with the jury, would not entitle petitioner to habeas relief because the remarks were relatively isolated, were not extensive, and were only a small part of the prosecutor's case. *Byrd,* 209 F.3d at 532. This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 11/6/12, p. 212). *See Cockream v. Jones,* 382 F. App'x. 479, 486 (6th Cir. 2010); *see also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999). Finally, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v.*

*Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002) (citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)).

Petitioner next claims that the prosecutor committed misconduct by injecting facts that had not been introduced into the record. Petitioner claims that, in rebutting petitioner's testimony that he was beaten by the police during his arrest, the prosecutor impermissibly stated that if he was beaten, "his lawyer could have referred it to some federal agency" and there was "no evidence at all that such a referral was made." Petitioner also claims that the prosecutor implied that a hole in the right pocket of petitioner's jacket could have been caused by a gun, when there was no evidence that the hole was caused by a gun.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209

F.3d at 535. However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, both of the prosecutor's arguments were reasonable inferences from the evidence admitted. In any event, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F.3d 482, 495 (6th Cir. 2003).

Petitioner finally argues that the prosecutor knowingly elicited false testimony from Officer McCormick because the officer's police report indicated that he had pulled his vehicle directly behind petitioner's vehicle once he had located petitioner following the carjacking, but at trial, Officer McCormick testified that there was another vehicle in between his police cruiser and petitioner's vehicle.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264,

269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d at 517-18.

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has offered no proof to this Court or to the state courts that Officer McCormick testified falsely about the location of petitioner's

vehicle with respect to his own police vehicle. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Because petitioner merely alleges an inconsistency between Officer McCormick's police report and his testimony, he has failed to establish that the officer committed perjury, so as to entitle him to habeas relief on this claim. *Malcum,* 276 F. Supp. 2d at 684.

Assuming that Officer McCormick lied about whether petitioner's vehicle was directly in front of his police vehicle, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Officer McCormick had testified falsely on this matter. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009).

Moreover, even if Officer McCormick's police report was sufficient to put the prosecutor on notice that he may have testified falsely about the placement of petitioner's vehicle in relation to the police vehicle, the prosecutor's failure to correct Officer McCormick's trial testimony did not violate petitioner's due process rights or entitle him to habeas relief because defense counsel also had access to Officer McCormick's police

report and thus defense counsel was in an equal position as the prosecutor to clarify or correct Officer McCormick's testimony. *See Brooks v. Tennessee*, 626 F.3d 878, 896 (6th Cir. 2010).

Finally, in light of the overwhelming evidence of petitioner's guilt, the testimony concerning whether petitioner's car was right in front of Officer McCormick's police cruiser was not material to petitioner's conviction, because this testimony was not a "crucial link" in the case against petitioner. *See, e.g., Foley v. Parker,* 488 F.3d 377, 392 (6th Cir. 2007); s*ee also Rosencrantz,* 568 F.3d at 588 (prosecutor's failure to correct victim's material testimony that she had not met with prosecutors prior to her testimony at defendant's trial for sexual assault was "harmless error"; uncorrected testimony would likely fail to substantially influence jury's verdict given victim's uncontradicted testimony about assailant's tattoo). Petitioner is not entitled to relief on his third claim.

### 4. Petitioner's Fourth Claim

In his fourth claim, petitioner alleges that trial counsel was ineffective for failing to object to most of the prosecutorial misconduct that petitioner alleges in his third claim. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas

petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the prosecutor's questions and comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to some of these remarks. *Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his fourth claim.

### 5. Petitioner's Sixth and Fourteenth Claims

In his sixth claim and also as part of his fourteenth claim, petitioner argues that trial counsel was ineffective for failing to interview or call one of the victims, Louise White, to testify at trial. Although subpoenaed by the prosecutor, Ms. White was excused from appearing at trial because the prosecutor claimed that she was suffering from several medical conditions. *See* Claim # 5, *infra.* Petitioner raised this claim in his post-conviction motion for relief from judgment, but failed to attach any affidavit from Ms. White concerning her proposed testimony. Conclusory allegations of ineffective assistance of counsel, without any evidentiary

support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner failed to attach any offers of proof or any affidavits sworn by Ms. White. Nor has Petitioner offered any evidence, beyond his own assertions, as to whether Ms. White would have been able to testify and what the content of her testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. White to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

### 6. Petitioner's Eighth and Fourteenth Claims

In his eighth claim, petitioner alleges that the prosecutor improperly referred several times to petitioner's post-*Miranda* silence. As part of his fourteenth claim, petitioner contends that trial counsel was ineffective for failing to object to this silence. Petitioner raised this claim

in his post-conviction motion for relief from judgment. The judge rejected the claim on the erroneous belief that petitioner had already raised this claim on his appeal of right and thus was precluded, pursuant to M.C.R. 6.508(D)(2), from seeking post-conviction relief on this claim. The judge never addressed the merits of the claim.

When a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 556 U.S. 449, 472 (2009).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); s*ee also Gravley v. Mills*, 87 F.3d 779, 786 (6th Cir. 1996).

Petitioner maintains that the prosecutor improperly questioned petitioner about his post-*Miranda* silence with the following exchange:

**Prosecutor**:  Do you remember meeting with an investigator by the name of Christopher Lanfear?

**Petitioner**: Yes.

**Prosecutor**:  You spent some time with him, didn't you?

> **Petitioner**: Yes.
>
> **Prosecutor**: Several hours?
>
> **Petitioner**: Yes.
>
> **Prosecutor**: Didn't you tell him that the car was a crack rental?
>
> **Petitioner**: No, I told him I got the car from Carlos Brantley sir.

(Tr. 11/6/12, p. 170).

The Supreme Court's holding in *Doyle* is inapplicable to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Although each of two inconsistent statements may be said to involve silence insofar as it omits facts included in the other version, *Doyle* does not require any such formalistic understanding of silence. *Id.* at 447 U.S. at 409.

The Supreme Court's holding in *Doyle* did not bar the prosecutor's question because petitioner made his statement to Officer Lanfear after

being given his *Miranda* warnings.  The prosecutor's question was not an improper reference to petitioner's right to remain silent, but was instead proper under *Anderson v. Charles, supra,* to impeach petitioner's inconsistent testimony. *See Dye v. Hofbauer,* 197 F. App'x. 378, 386 (6th Cir. 2006).

Petitioner also argues that the following exchange violated *Doyle:*

**Prosecutor**:  In court today, on this date, November 6, 2012, ironically my birthday, is the first time you have ever told anybody your version of the events?

**Petitioner**:  No it's not true.

**Prosecutor**:  Who did you tell?

**Petitioner**:  I told the police October 24th.

**Prosecutor**:  Really?

**Petitioner**:  The police officer you was talking about, I told him October 24th.

(Tr. 11/6/12, p. 156).

The prosecutor's questions were not improper.  In certain cases, a defendant might open the door for post-arrest silence to be introduced as evidence by the prosecution:

It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events

29

and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Doyle*, 426 U.S. at 619 n. 11 (internal citations omitted).

The prohibition against reference to post-arrest silence does not allow the defendant to "freely and falsely create the impression that he has cooperated with police when, in fact, he has not." *Earnest v. Dorsey*, 87 F.3d 1123, 1135 (10th Cir. 1996) (quoting *United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir 1975)). Reference to post-arrest silence is permissible for rebuttal purposes when defendant implies that he cooperated with the police or implies that he gave the police an exculpatory statement. *Id.*

In the present case, petitioner testified that he told the detective his version of events. It was thus permissible for the prosecutor to attempt to impeach petitioner regarding the fact that he had not previously told the police his story.

Petitioner lastly claims that the prosecutor improperly referred to his post-*Miranda* silence when he asked petitioner whether there were any witnesses who would testify favorably for the defense. (Tr. 11/6/12,

p. 170).  The prohibition against a prosecutor commenting on a criminal defendant's silence "does not extend to a defendant's failure to call a witness or to otherwise present exculpatory evidence." *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002).   Accordingly, the prosecutor's questions here did not violate *Doyle*.

Because the prosecutor's questions and comments regarding petitioner's post-arrest silence were not improper, counsel's failure to object to references to petitioner's post-arrest silence was not ineffective assistance of counsel. *See Solomon v. Kemp*, 735 F.2d 395, 403 (11th Cir. 1984).

As part of his eighth claim, petitioner also claims that the prosecutor's questions improperly infringed on petitioner's attorney-client privilege.  The attorney-client privilege is a creation of the common law, not the federal Constitution. *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) (internal citations omitted).  Because federal habeas review is limited to violations of the United States Constitution or its laws and treatises, any violation of a habeas petitioner's attorney-client privilege would not warrant habeas relief. *Id.*

7. <u>Petitioner's Ninth Claim</u>

In his ninth claim, petitioner contends that the prosecutor violated his Sixth Amendment right to confrontation by questioning petitioner about remarks that he had made in a pre-sentence investigation report involving a prior carjacking offense and in remarks that petitioner had made to Officer Lanfear. Petitioner claims that his right to confrontation was violated because neither the probation officer who took petitioner's statements for the pre-sentence report or Officer Lanfear testified at petitioner's trial. Petitioner also claims that trial counsel was ineffective for failing to object to this testimony.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). Petitioner's statements to the probation officer or the police, however, are not testimonial hearsay, because they are admissions by a party-opponent. These statements are, by definition, not hearsay under either Federal Rule of Evidence 801(d)(2)(A) or Michigan Rule of Evidence

801(d)(2)(A).   Because the prohibition announced in *Crawford* only applies to hearsay, that prohibition does not cover petitioner's own admissions. *See United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006); *See also Miller v. Stovall,* 573 F. Supp. 2d 964, 997 (E.D. Mich. 2008).   Because the questions about petitioner's prior statements did not violate the Confrontation Clause, counsel was not ineffective for failing to object to their admission on this basis. *See e.g. U.S. v. Johnson,* 581 F.3d 320, 328 (6th Cir. 2009).

## 8. Petitioner's Tenth Claim

In his tenth claim, petitioner contends that his due process rights were violated when the trial court permitted the prosecutor to introduce evidence of petitioner's subsequent flight and arrest in Wayne County, Michigan, because this was "other acts" evidence that was admitted in violation of M.R.E. 404(b) for the sole purpose of showing that petitioner was a bad person.   Petitioner further alleges that trial counsel was ineffective for failing to request a limiting instruction on this evidence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review

to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990) (admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law that holds that a state violates a habeas petitioner's due

process rights by admitting propensity evidence in the form of "other acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Moreover, it is not clear that the evidence that petitioner complains about would be excluded under 404(b). Background evidence, often referred to as *res gestae*, does not implicate the provisions of 404(b). *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000). Background evidence consists of other acts which are "inextricably intertwined" with the charged offenses or those acts, "the telling of which is necessary to complete the story of the charged offense." *Id.* The Sixth Circuit explained that:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy,* 228 F.3d at 748.

As the judge explained in rejecting petitioner's claim on post-conviction review, petitioner's apprehension in the victim's car with a gun and the other victims' purses and other items minutes after the arrest was admissible under M.R.E. 404(b) because the evidence "was so blended or connected with the charged crime that proof of one

incidentally involves the other or explains the circumstances of the crime." *People v. Jones,* No. 12-241361-FC, p. 6 (Oakland Cty .Cir. Ct., July 17, 2015). Because petitioner's arrest was "inextricably intertwined" with the crime, the admission of this evidence did not deprive petitioner of a fair trial. In light of the fact that this evidence was admissible under 404(b), counsel's failure to request a limiting instruction was not ineffective. *See Jackson v. U.S.,* 248 F. Supp.2d 652, 657 (E.D. Mich. 2003).

### 9. Petitioner's Twelfth Claim

In his twelfth claim, petitioner contends that trial counsel was ineffective for permitting petitioner to take a polygraph examination with the police without counsel being present. Petitioner argues that he is entitled to habeas relief because this was a critical stage of the proceedings which required the presence of counsel.

The Sixth Circuit indicated that in "cases where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial[,]" a harmless error analysis applies. *See Mitzel v. Tate,* 267 F.3d 524, 534 (6th Cir. 2001) (quoting *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)). In this case, assuming that petitioner's

Sixth Amendment rights were violated by counsel's absence from the polygraph examination, habeas relief is unavailable unless there is more than a reasonable possibility that this contributed to the jury's guilty verdict. *Id.* In light of the overwhelming evidence of petitioner's guilt, coupled with the relatively innocuous statements made by petitioner to Officer Lanfear at the polygraph examination, this Court does not believe that there is anything more than a possibility that counsel's absence from the polygraph examination contributed to the jury's decision to find petitioner guilty. *Id.* at 535. Petitioner is not entitled to relief on his twelfth claim.

## B. Claim # 5. The endorsed witness claim.

Petitioner in his fifth claim alleges that his Sixth Amendment right to confrontation and his due process right to a fair trial were violated by the judge's decision to excuse the prosecutor from producing Louise White for trial after the prosecutor informed the trial court that Ms. White was suffering from several health problems. Petitioner further argues that the judge erred in failing to instruct the jurors that they could infer that Ms. White would have given favorable testimony for petitioner had she been called to testify.

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him or to her. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). The right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v. Bryant,* 461 F.2d 912, 916 (6th Cir. 1972); s*ee also Turnbough v. Wyrick,* 420 F. Supp. 588, 592 (E.D. Mo. 1976) (right to confrontation not denied by state's failure to call victim as a witness). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California,* 386 U.S. 58, 62, n. 2 (1967), the Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a

potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F.2d 1, 9 (1st Cir. 1985) (internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 F. App'x. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz,* 856 F.2d 192 (Table), 1988 WL 87710, \* 2 (6th Cir. Aug. 24, 1988) (citing *Bryant,* 461 F.2d at 916). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F. App'x. at 559. Petitioner presented no evidence that Ms. White would have offered exculpatory evidence had she testified; he is not entitled to habeas relief.

The Court rejects the related instructional error claim. A habeas petitioner is entitled to relief only if the defective jury instruction "so

infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce the endorsed witness. *See Stadler v. Curtin,* 682 F. Supp.2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to relief on his fifth claim.

## C. Claim # 7. The Fourth Amendment claim.

Petitioner in his seventh claim alleges that he was illegally arrested in violation of his Fourth Amendment rights.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952

(6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims, not whether he or she in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *rev'd on other grds,* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state

court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994)).

Petitioner presented his Fourth Amendment claim in his post-conviction motion for relief from judgment before the trial court and the Michigan appellate courts. *People v. Jones,* No. 12-241361-FC, p. 5 (Oakland Cty. Cir. Ct., July 17, 2015). Because petitioner was able to raise his illegal arrest claim in his post-conviction motion, petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts and is thus not entitled to habeas relief. See *Hurick v. Woods*, 672 F. App'x. 520, 535 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 96 (2017).

### D. Claim # 11. The suggestive identification claim.

In his eleventh claim, petitioner alleges that the corporeal lineup in which he was identified as the perpetrator by Ms. Angela Williams was impermissibly suggestive and that there was no independent basis for the in-court identification. Petitioner further alleges that the judge erred in refusing defense counsel's request to conduct a pre-trial *Wade* hearing to challenge the suggestiveness of the identification procedure. The Michigan Court of Appeals rejected the claim:

Before trial began, defense counsel brought an oral motion for a *Wade* [3] hearing, arguing that the lineup was unduly suggestive because the victim who identified defendant as the perpetrator had been driven to the police department by the detective who was handling the investigation. The prosecutor opposed the motion, arguing that there was no basis to claim that there was anything about the lineup that warranted a *Wade* hearing. In fact, the prosecutor argued, an attorney had been appointed to preside over the lineup and she had made no objections of any kind that would merit a hearing on the witness' ability to identify the defendant. The trial court concluded that defendant failed to establish that a Wade hearing was necessary and denied defendant's motion.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On appeal, defendant again argues that the lineup was unduly suggestive because the victim who identified defendant as the perpetrator had been driven to the police department by the detective who was handling the investigation. However, this argument fails to identify a factual basis on which to conclude that the detective improperly or unduly suggested that defendant was the perpetrator. Thus, the trial court properly denied defendant's pretrial request for a *Wade hearing*.

Defendant also argues on appeal that the lineup was unduly suggestive because the police returned the victims' purses to them before the lineup was conducted, the identifying victim's selection of defendant was "tentative," and defendant had less facial hair than the other men in the lineup. However, the victim who identified defendant from the lineup testified that she was not told that the perpetrator would actually be in the lineup, no one suggested who she should select from the lineup, she was aware that an attorney was present at the lineup and represented defendant, and she was "sure" about

---

[3] *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (footnote in original).

her identification of defendant as the perpetrator. When she was asked if she was "certain," she replied "Yes." When she was asked: "No doubt about it," she replied "No doubt." Further, it appears from the photograph of the lineup that all of the men in the lineup had facial hair. But, in any case, such physical differences generally relate only to the weight to be afforded the identification, not its admissibility. Thus, the record does not establish a basis to conclude that an improper or unduly suggestive pretrial identification procedure led to a substantial likelihood that defendant was misidentified. Therefore, it was not necessary for the trial court to determine whether an independent basis for the victim's in-court identification existed and the trial court's decision to admit the identification evidence was not clearly erroneous.

*People v. Jones*, 2014 WL 3047444, at *6-7 (internal citations omitted).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997) (citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).

Five factors should be considered in determining the reliability of identification evidence:

1. the witness's opportunity to view the criminal at the time of the crime;
2. the witness's degree of attention at the time of the crime;
3. the accuracy of the witness's prior description of the defendant;
4. the witness's level of certainty when identifying the suspect at the confrontation; and,
5. the length of time that has elapsed between the time and the confrontation.

*Neil,* 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner first claims that the lineup procedure was unduly suggestive because the detective either expressly told Ms. Williams that the perpetrator was in the lineup or implicitly suggested through his act of driving Ms. Williams to the lineup and returning her purse to her that the perpetrator was actually in the lineup.

Petitioner's claim is without merit. First, Ms. Williams testified that no one told her prior to the lineup that the person who robbed her would be a participant in the lineup. (Tr. 11/5/12, p. 266). The detective also testified that he told Ms. Williams that the individual who robbed her might or might not be in the lineup. (Tr. 11/6/12, p. 104). Furthermore, a pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that the suspects were in custody when the line-ups were conducted. *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (citing *United States v. Bowman,* 215 F.3d 951, 966 (9th Cir. 2000)). As the Ninth Circuit has noted, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F.3d at 966 (emphasis original).

Petitioner further claims that the lineup was unduly suggestive because he had less facial hair than the other participants. Petitioner's claim is without merit. The Court has reviewed a copy of the lineup photograph that was provided as part of the Rule 5 materials.[4] It appears that the participants all had similar amounts and types of facial hair. In

---

[4] See Appendix B to Appellee's Brief in Response to Standard 4 Supplemental Brief, Dkt. 7-11, Pg ID 920.

any event, "There is no absolute requirement that other persons in a lineup be nearly identical to the suspect." *Johnson,* 344 F. Supp. 2d at 1091 (citing *Van Tran v. Lindsey*, 212 F.3d 1143, 1156 (9th Cir. 2000)). "A lineup of clones is not required." *Id.* (quoting *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998)). Police officers who conduct a lineup "are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation[;]." *Id.* In light of the other circumstances surrounding the lineup, petitioner's lineup was not unduly suggestive.

In this case, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show—under the totality of circumstances—that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Ms. Angela Williams testified that during the robbery she looked at petitioner, at Louise, and at the gun. Ms. Williams was close to petitioner and looked directly at petitioner's eyes and face and could see his face through the stocking cap he was wearing. (Tr. 11/5/12, p. 248-50, 258-60, Tr. 11/6/12, pp. 10, 23-25). Moreover, the length of time between the robbery and the challenged identifications was only one day and Ms. Williams never identified

anyone else as being the perpetrator. (Tr. 11/5/12, pp. 269-70). These factors all support a finding that an independent basis existed for Ms. Williams' in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001.)

Moreover, with respect to Ms. Williams' attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d 459, 473 (6th Cir. 2005); s*ee also United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that Ms. Williams was being robbed at gunpoint, it was not unreasonable for the state courts to conclude that Ms. Williams paid a high degree of attention to her assailant.

Furthermore, even if there were slight discrepancies between Ms. Williams' initial description of her assailant and petitioner's appearance,

this would be insufficient to render the in-court identification suspect, in light of the fact that Ms. Williams was able to get a good look at petitioner and testified that she was certain in his identification of petitioner as being the suspect. *See Hill,* 967 F.2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

Finally, the reliability of Ms. Williams' in-court identification is supported by the fact that she "testified without equivocation" that petitioner was her assailant. (Tr. 11/5/12, p. 273; Tr. 11/6/12, pp. 28-29). *Howard,* 405 F.3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848. In the present case, petitioner was caught by the police a short time after the robbery

only about five to six miles from the crime scene driving Valarie Williams' stolen vehicle. Petitioner attempted to flee from the police when they went to arrest him. Petitioner was carrying a black handgun, and had a stocking cap in his pocket. The police found the victims' purses in Valarie's car. (Tr. 11/5/12, pp. 228-230, 255; Tr. 11/6/12, pp. 43, 77, 79, 81, 84-85, 90). Given all of this evidence, any error in admission of Ms. Williams' allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis,* 21 F. App'x. 360, 363 (6th Cir. 2001); *see also Williams v. Stewart,* 441 F.3d 1030, 1039 (9th Cir. 2006) (strong circumstantial evidence linking petitioner to crime scene rendered admission of pre-trial identification harmless); *Flaherty v. Vinzant,* 386 F. Supp. 1170, 1175 (D. Mass. 1974) (admission of suggestive identification harmless error at best where petitioner had handkerchief folded in the shape of a mask in his pocket at the time of his arrest).

Petitioner failed to show that Ms. Williams' in-court identification was the product of a suggestive pre-trial identification. Indeed, "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d

825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012). There is no suggestion that Ms. Angela Williams was subjected to a suggestive pre-trial identification; accordingly, Ms. Williams' in-court identification of Petitioner does not entitle him to habeas relief.

## E. Claim # 13. The ineffective assistance of appellate counsel claim.

Petitioner contends that appellate counsel was ineffective for failing to raise his sixth, seventh, eighth, tenth, or fourteenth claims on his appeal of right. Petitioner's claims are without merit. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)

(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

**F.  The motion for an evidentiary hearing is DENIED.**

Petitioner filed a motion for an evidentiary hearing. A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). In light of the fact that petitioner's claims are devoid of merit, he is not entitled to an evidentiary hearing on his claims.

## IV.  CONCLUSION

The Court hereby denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d at 880. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the motion for an evidentiary

hearing, Dkt. 2, is **DENIED.**

IT IS FURTHER ORDERED that a Certificate of Appealability is

**DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED**

leave to appeal *in forma pauperis.*


Dated:  February 6, 2018        s/Terrence G. Berg
_____
                                TERRENCE G. BERG
                                UNITED STATES DISTRICT JUDGE


## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 6, 2018.

s/A. Chubb
_____
Case Manager